**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-CR-60129-SINGHAL**

**UNITED STATES OF AMERICA**

**v.**

**LAZARO HERNANDEZ,**

**Defendant.**

_____/

## AGREED FACTUAL BASIS FOR GUILTY PLEA

Defendant Lazaro Hernandez (hereinafter referred to as the "Defendant") hereby acknowledges and agrees that, if this case were to go to trial, the United States would establish and prove the following facts beyond a reasonable doubt:

From in or around April 2019, and continuing through in or around at least October 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the Defendant knowingly and willfully combined, conspired, confederated, and agreed with Individual 1 and others, in violation of Title 18, United States Code, Section 371, to (a) with the intent to defraud and mislead, introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered for introduction into interstate commerce, adulterated and misbranded drugs, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2), and (b) defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the FDA in its oversight and

regulation of the interstate sale and distribution of drugs in the United States and its efforts to safeguard the health and safety of consumers who purchase drugs in the United States.

From in or around July 2019, and continuing through in or around at least October 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the Defendant did knowingly and voluntarily combine, conspire, confederate, and agree with Individual 2 and others, in violation of Title 18, United States Code, Section 1956(h), to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).  The specified unlawful activity was an offense involving a Federal health care offense, namely, a conspiracy to introduce into interstate commerce adulterated and misbranded drugs, in violation of Title 18, United States Code, Section 371, that relates to a health care benefit program, and the introduction into interstate commerce of adulterated and misbranded drugs, in violation of Title 21, United States Code, Section 331(a), that relates to a health care benefit program.

The term "prescription drug diversion" referred to the various ways in which prescription drugs were removed from regulated distribution channels and subsequently reintroduced into the wholesale marketplace.  Common methods of prescription drug

diversion included acquiring the drugs illegally from individual patients for whom the prescription drugs had been prescribed and dispensed but intentionally not consumed. These diverted drugs were then reintroduced into the wholesale marketplace with false documentation concealing their true source and eventually resold to individual consumers by pharmacies. The false documentation accompanying the sale of diverted drugs included product tracing information, which consisted of transaction information, transaction history, and a transaction statement. The product tracing information identified, among other things, the product, the quantity, the lot number, strength and dosage, the date of each sale, and the parties to each transaction. Such product tracing information was commonly referred to in the industry as "T3s" or "pedigrees."

AllSource Medical Supply LLC, RSNE LLC, A1A Wholesale LLC, Gentek LLC, and My Meds LLC (collectively, the "Drug Diversion Companies") were limited liability companies organized under the laws of the States of Florida, Pennsylvania, New Jersey, and Connecticut that purported to sell legitimate prescription drugs, including expensive HIV medication, to wholesale distributors of pharmaceutical products.

The Defendant and his co-conspirators engaged in prescription drug diversion. The Defendant and his co-conspirators placed the Drug Diversion Companies in the names of straw owners. In reality, the Defendant and his co-conspirators controlled and operated the Drug Diversion Companies and used these companies, as well as a pass-through entity, Pass-Through Entity 1, to sell diverted drugs to Wholesale Company 1 (located in Mississippi), Wholesale Company 2 (located in Maryland), and Wholesale Company 3 (located in New York) (collectively, the "Wholesale Companies"). The

3

*LH*

Defendant knew that the Wholesale Companies then resold the diverted drugs to pharmacies throughout the United States. The Defendant further knew that these pharmacies in turn sold and dispensed the diverted drugs to consumers throughout the United States and typically billed the drugs to health care benefit programs, including Medicare.

The diverted drugs that the Defendant and his co-conspirators sold to the Wholesale Companies had falsified pedigrees, which contained false information concerning the drugs (*i.e.*, their source and lot number), designed to conceal the true source of the drugs. The diverted drugs that the Defendant and his co-conspirators sold to the Wholesale Companies were also accompanied by falsified labeling and inaccurate patient inserts and directions for use. For example, many of the patient inserts accompanying the diverted drugs had missing information, typos, and other errors. Additionally, in at least several instances, the diverted drugs sold by the Defendant and his co-conspirators to the Wholesale Companies contained the wrong medication, broken or glossy pills, and even pebbles, and pharmacies complained to the Wholesale Companies about these problems. The Defendant was made aware of several of these complaints from pharmacies by his co-conspirators, including Individual 1.

In furtherance of the drug diversion conspiracy, the Defendant and his co-conspirators committed numerous overt acts. For example:

1. On or about June 12, 2019, the Defendant met with Individual 1 and other co-conspirators in Broward County, Florida, to discuss the sale of HIV drugs at steeply discounted prices.

*LH*

2. On or about October 16, 2019, the Defendant sent Individual 1 a text message stating, "Dint u get the 400 I sent thru A1A?"

3. On or about October 24, 2019, the Defendant sent Individual 1 a text message stating, "Can I send you like 40 Truvada with no back pack thru all source?"

4. On or about November 4, 2019, co-conspirators at Wholesale Company 1 sent a payment of approximately $957,119 to AllSource Medical Supply LLC for diverted drugs.

5. On or about October 5, 2020, co-conspirators at Wholesale Company 3 sent a payment of approximately $1,115,085 to Gentek LLC for diverted drugs.

6. On or about February 24, 2021, co-conspirators at Wholesale Company 3 sent a payment of approximately $2,000,000 to Gentek LLC for diverted drugs.

In total, from in or around April 2019, and continuing through in or around October 2021, the Defendant and his co-conspirators sold diverted, adulterated, and misbranded drugs, with falsified documentation, totaling approximately $232,800,000, as reflected in the chart below.

| Drug Diversion Company | Time Period | Customer | Sales |
|---|---|---|---|
| Pass-Through Entity 1 | July 2019 – April 2020 | Wholesale Company 1 (Mississippi) | $82 million |
| AllSource Medical | Oct. 2019 – April 2020 | Wholesale Company 2 (Maryland) | $30.6 million |
| Gentek | June 2020 – Jan. 2021 | Wholesale Company 2 (Maryland) | $42.9 million |
| Gentek | July 2020 – Feb. 2021 | Wholesale Company 3 (New York) | $62.7 million |
| My Meds | Dec. 2020 – July 2021 | Wholesale Company 3 (New York) | $14.6 million |
| | | | $232.8 million |

Once the Drug Diversion Companies received payments from the Wholesale

LH

Companies for the diverted drugs, the Defendant and his co-conspirators transferred the money to various shell corporations, including MDSD Enterprises LLC, WDS Distribution Corp, and Elant Wholesale LLC (collectively, the "Shell Laundering Companies") to launder the proceeds of the drug diversion conspiracy. Similar to the Drug Diversion Companies, the Defendant and his co-conspirators placed the Shell Laundering Companies in the names of straw owners. In reality, the Defendant and his co-conspirators controlled the Shell Laundering Companies and used them to conceal their role in the charged conspiracies and to conceal the nature and source of the illicit proceeds. After transferring the fraud proceeds to the Shell Laundering Companies, the Defendant and his co-conspirators withdrew the fraud proceeds in cash from bank accounts of the Shell Laundering Companies. For example, Individual 2 worked with the straw owners of the Shell Laundering Companies to withdraw the fraud proceeds in cash and met with the Defendant on numerous occasions to provide the Defendant the fraud proceeds in cash, minus a fee. Specific instances of money laundering committed by the Defendant and his co-conspirators are detailed in the chart below:

| APPROXIMATE DATE OF TRANSACTION | DESCRIPTION OF TRANSACTION |
|---|---|
| October 22, 2019 | Electronic wire transfer in the approximate amount of $121,078 from RSNE, LLC JP Morgan Chase bank account ending in 0091 into WDS Distribution Corp Regions Bank account ending in 9454 |
| February 17, 2021 | Electronic wire transfer in the approximate amount of $198,456 from Gentek LLC Citibank bank account ending in 4795 into Elant Wholesale LLC Citibank account ending in 6832 |

*LH*

| February 19, 2021 | Electronic wire transfer in the approximate amount of $250,000 from My Meds LLC Wells Fargo bank account ending 5667 into MDSD Enterprises LLC JP Morgan Chase account ending in 5301 |
|---|---|

In total, the Defendant and his co-conspirators are responsible for laundering approximately $232,800,000 in proceeds obtained through the illicit sale of diverted, adulterated, and misbranded drugs by the Drug Diversion Companies to the Wholesale Companies.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all of the facts known to me concerning the criminal activity in which I and others were engaged. I make this statement knowingly and voluntarily because I am in fact guilty of the crimes charged.

Date: 12/10/22

By: _____
LAZARO HERNÁNDEZ
Defendant

Date: 12/10/22

By: _____
TERESA WILLIAMS
Counsel for Defendant

Date: 12/12/2022 _____

By: _____
ALEXANDER THOR POGOZELSKI
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice

7

Date: 12-12-22

By: _____

TIMOTHY J. ABRAHAM
Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of Florida